UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| V. | * | DOCKET NO. 1:19-CR-10104-ADB-3 |
| | * | |
| STEPHAN ROSSER-STEWART | * | |
| Defendant. | * | |

## MOTION TO SUPPRESS IDENTIFICATIONAND INCORPORATED MEMORANDUM OF LAW – LEAVE FOR FILE GRANTED ON FEBRUARY 5, 2020

The defendant, Stephan Rosser-Stewart respectfully moves the Court to suppress the photo identification made of him on January 26, 2019 shortly after 8:00 p.m. in Brockton, Massachusetts in a procedure conducted by officers of the Brockton Police Department, and all the fruits of that identification.

## STATEMENT OF FACTS

The Court has previously made findings of fact in its Memorandum and Order on Defendant's Motion to Suppress (Docket No. 97 at 1 – 3).  Those findings included the circumstances of the photo identification of Rosser-Stewart by a suspect who was cooperating with the Brockton police.  Citing police reports, the Court found that after Rosser-Stewart was handcuffed, pat-frisked for weapons, and placed in the rear seat of a Massachusetts State Police trooper's cruiser:

> Two officers from the Brockton Police Department then arrived on the scene to assist [Trooper] Resendes.  One officer sent a photo of Rosser-Stewart to a Brockton detective, who was interviewing a cooperating suspect.  After the cooperating suspect confirmed that Rosser-Stewart was one of the suspects involved in the armed robbery, officers from the Brockton Police placed Rosser-Stewart under arrest and took him into custody.

1

## ARGUMENT

The Constitution, caselaw holds, guards against convictions tied to evidence of questionable reliability—not by banning the evidence's admission, but by giving defendants the tools to convince jurors the evidence is not belief-worthy. *See Perry v. New Hampshire,* —— U.S. ——, 132 S.Ct. 716, 723, 181 L.Ed.2d 694 (2012). There is, however, a small exception for police-arranged identifications—think photo arrays, showups, and lineups. *See id.* at 724. Due process, we see, bars trial courts from admitting such evidence "if the ... identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"—irreparable because trial mechanisms would not help a jury distinguish between reliable and unreliable identifications. *See Neil v. Biggers,* 409 U.S. 188, 197, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)); *see also Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Based on the *Biggers* line of cases, courts confronted with a challenge to a police-run identification process must ask, first, whether the process was unduly suggestive, and, if yes, whether the identification was still reliable given the totality of the circumstances. *See, e.g., United States v. Arthur,* 764 F.3d 92, 99–100 (1st Cir.2014); *United States v. Jones,* 689 F.3d 12, 17 (1st Cir.2012).

*United States v. Correa-Osorio,* 784 F.3d 11, 19 (1st Cir. 2015).

The present case involves a police-arranged identification – the presentation of a single photograph, that of Rosser-Stewart, to a suspect who was cooperating with the police in their investigation of the armed robbery for which Rosser-Stewart was being detained by Trooper Resendes. Thus, that identification must be excluded from evidence at trial, under principles grounded in the Due Process Clause of the Fifth Amendment, "if the ... identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers, supra.*

A two-step analysis is used to determine whether suppression is appropriate. <u>United States v. Holliday</u>, 457 F. 3d 121, 125 (1st Cir. 2006); <u>United States v. Henderson</u>, 320 F. 3d 92, 100 (1st Cir. 2003). "We look first to see if there was anything impermissibly suggestive about

the identification procedure and, second, if there was impermissible suggestiveness, to decide whether the identification itself was reliable under the totality of the circumstances." Holliday, 457 F. 3d 125; Henderson, 320 F. 3d at 100. The review of the court's ruling on such a motion to suppress is plenary. *Henderson,* 320 F.3d at 99. The courts review findings of fact for clear error. *United States v. Brennick,* 405 F.3d 96, 99–100 (1st Cir.2005). In the end, the First Circuit Court of Appeals will affirm a district court's denial of a suppression motion if any reasonable view of the evidence supports it. *United States v. Rivera-Rivera*, 555 F. 3d 277, 282-83 (1st Cir. 2009); *United States v. St. Pierre,* 488 F.3d 76, 79 (1st Cir.2007).

The Supreme Court has several times considered whether witness identifications that follow impermissibly suggestive police conduct must be excluded in order to maintain due process. *See Perry v. New Hampshire,* ─U.S. ─, 132 S.Ct. 716, 723–24, 181 L.Ed.2d 694 (2012) (summarizing cases). In a nutshell, whether the identification evidence must be excluded turns on a case-by-case assessment of the reliability of the identification notwithstanding the suggestive actions of the police. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony...."). In plain terms, we distinguish between, at one end of the spectrum, a witness who would have easily identified the defendant without the suggestive police misconduct and, at the other end of the spectrum, a witness whose identification is very likely simply a product of that suggestion.

The factors to be considered include:

[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the

criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and

[5] the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The corrupting effect of the unduly suggestive procedure is then weighed against an analysis of these factors. Manson, 432 U.S. at 114, 97 S.Ct. 2243.

United States v. Constant, 814 F.3d 570, 575–76 (1st Cir. 2016)

The Defendant submits that the Brockton police conducted an impermissibly suggestive

identification procedure here by presenting a single photograph of Rosser-Stewart to the

cooperating suspect.  One-on-one displays of a single photograph of a suspect are generally

disfavored.  Stovall v. Denno, 388 U.S. 239, 302 (1967; See, United States v. Jones, 689, F. 3d

12 (1$^{1st}$ Cir. 2012). With a show-up, there is a danger that the witness will "be influenced by the

fact that the police appear to believe the person brought in is guilty, since presumably the police

would not bring someone that they did not suspect had committed the crime." United States v.

Funches, 84 F. 3d 249, 254 (7th Cir. 1996). Courts have recognized that "one-on-one show-ups

are inherently more suggestive than lineups and [] purposely not encouraged their use." United

States v. Watkins, 741 F. 2d 692, 694 (5th Cir. 1984).[1]

The suggestive nature of the one photo show-up identification procedure utilized here is

not, as outlined above, the end of the analysis. The reviewing court "must [also] look to whether

---

[1] However, despite the suggestiveness of a one-on-one photo show-up, a further issue to consider is whether "the suggestive nature of the identification was necessary under the circumstances. See United States v. Holliday, 457 F. 3d 121, 125 (1st Cir. 2006) ("The first prong of the test – whether the identification procedure was impermissibly suggestive – can be broken down into two constituent parts: that concerning the suggestiveness of the identification, and that concerning whether there  was some good reason for the failure to resort to less suggestive procedures.")...): United States v. Watson, 76 F. 3d 4, 6, (1st Cir. 1996) ("Show-ups that take place immediately after the offense has been committed may be necessary in order to avoid the mistaken apprehension of the wrong person.")..." United States v. Arthur, 764 F. 3d, 92, n. 7 (1st Cir. 2014).
  Courts, however, have questioned the need for suggestive show-ups where they are based on "simple convenience rather than extraordinary urgency." United States v. Newman, 144 F. 3d 531, 535 (7th Cir. 1998). A strong argument could be that a show-up is impermissibly suggestive where there are no exigent circumstances such as possibility of losing witnesses, no reason a lineup or array could not be arranged and no other interest warranting "the inherently suggestive procedure." Funches, 84 F. 3d at 254.

the identification is reliable given the totality of the circumstances." Arthur, 764 F. 3d at 99-100. In making that determination, the analysis articulated in Neil v. Biggers, supra must be utilized and applied to the facts and circumstances involved in the instance case. The factors outlined in that analysis will be addressed below in the order in which they are listed in Neil v. Biggers.

**1.      The opportunity of the witness to view the criminal at the time of a crime.**

The cooperating witness was purportedly with the Defendant at the time of the crime and during the ensuing flight from the Brockton Police. However, the record indicates that the robbery participants wore masks before, during, and after the robbery and the record is lacking much if any information as to whether the cooperating witness had an opportunity to view his co-defendants at a time where they were unmasked.

**2.      The witness degree of attention.**

As is the case with the previous factor, the record is sparse with respect to information or observations by the police regarding the cooperating suspect's degree of attention either during the robbery or during the robbery culprits flight from the police. One could assume that the cooperating suspect would be paying a great deal attention to his co-defendant's but absent evidence on this issue, the Defendant submits that this factor is at best neutral in the Biggers analysis.

**3.      The accuracy of the witness's entire description of the criminal.**

The cooperator did give the police a description of the individual he called "Earl". The description, in its entirety, that the cooperating suspect gave to the police of "Earl" was that "Earl" was 5'8"-6 feet tall, with a medium build, having a dark complexion with long braids[2].

---

[2] However, Det. Lopez, in his written report, had the cooperating suspect giving a less robust description. There,

However, no description of the clothing worn by "Earl" was provided by the cooperating suspect nor did he describe "Earl" as having any facial hair. In contract to this description, the Defendant had braids but they could not fairly be described as long. In addition, he had facial hair in the form of a beard and mustache, was wearing a fairly distinctive sweatshirt that had the words "Puma" written in large, hard to ignore, print affixed to the front and the sleeves of the sweatshirt and did not go by the name "Earl", but in fact went by his real name, which was the name he provided to Massachusetts States Police Trooper Resendes prior to the identification procedure. To be fair, the Defendant is 5'11" and of medium build, which is consistent with the description provided by the cooperating suspect. Nevertheless, the Defendant's readily identifiable features that were not described by the cooperating suspect leave the reliability of the cooperating witness's identification of the Defendant open to question.

**4.      The level of certainty demonstrated by the witness's confrontation.**

In the instant case the only information on this issue from Det. Lopez's report is that when the cooperating suspect was shown the photo of the Defendant that he identified him. The report contains no level of certainty. As such the identification of the Defendant by the cooperating suspect is deficient with respect to this factor and at best neutral.

**5.      The length of time between the crime and the confrontation.**

This is a factor that militates in favor of a combined finding of law and fact that the identification may have been reliable. The identification was made shortly after the armed robbery. However, this factor, standing alone, is insufficient to satisfy the Neil v. Bigger analysis and does not make the suggestive photo show-up reliable given the inconsistencies between the

---

Det. Lopez had the cooperating suspect describing "Defendant #1" (assumely the Defendant) as simply having "braided hair: 5'8"-6" in height", with no further details.

Defendant's actual appearance that day and the description provided by the cooperating suspect prior to viewing the photograph.

Moreover, there was simply no reason here to utilize a suggestive one photo show-up procedure. At the time of the identification procedure both the cooperating suspect and the Defendant were in custody. Neither one was going anywhere and were under police control. The Brockton Police could have utilized a less suggestive procedure by either presenting the photograph of the Defendant to the cooperating suspect in a photo array or by presenting the photo to the cooperator along with photographs of other individuals. Given that the Defendant's photograph was texted by Office Farrell to Detective Lopez it is evident that the Brockton Police had at their disposal the technological means to transmit and obtain photos of individuals fairly quickly and as such could have put together a much less suggestive method of identification without unnecessarily impeding or prolonging their investigation. There was no urgency at the time they utilized the suggestive one photo show-up and such procedure, given other less suggestive methods available, should not be countenanced by this court. <u>Newman</u>, 144 F. 3d at 535; <u>Funches</u>, 84 F. 3d at 254.

## <u>CONCLUSION</u>

For all the foregoing reasons, this motion to suppress the identification should be allowed and the identification of the Defendant by the cooperating suspect should be suppressed and where the identification made by the cooperating suspect led to the Defendant's arrest, any evidence as a result of the Defendant's arrest should also be suppressed.

Respectfully Submitted
Stephan Rosser-Stewart
By his Attorney,

7

Date: February 6, 2020                    /s/ Paul J. Garrity
                                          Paul J. Garrity
                                          14 Londonderry Road
                                          Londonderry, NH 03053
                                          (603) 434-4106


## CERTIFICATION OF SERVICE

I, Paul J. Garrity, hereby certify that on this 6th day in February, 2020, a copy of the within motion was e-filed for all parties involved.


Date: February 6, 2020                    /s/ Paul J. Garrity
                                          Paul J. Garrity