UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

No. 19-CR-10104-ADB

DIOVANNI CARTER.

Defendant

## GOVERNMENT'S MOTION IN LIMINE TO ADMIT JAIL RECORDING OF DARIUS CARTER

The United States respectfully moves *in limine* to admit a recording of a jail call of codefendant Darius Carter.  As grounds therefore, the government states that the recording of Darius Carter is admissible because it is not being offered for the truth of the matter asserted and therefore does not fall within the definition of hearsay under Fed. R. Evid. 801(c)(2).  Alternatively, the recording constitutes a statement of a coconspirator in furtherance of the conspiracy, making it otherwise admissible pursuant to Federal Rule of Evidence 801(d)(2)(E).[1]

## RECORDING AT ISSUE

The government intends to offer a recorded jail call made by Darius Carter, on March 5, 2019.  This is the same day that Diovanni Carter was arrested on a state arrest warrant for the robbery charged in this case.  The government intends to admit the early portion of the call where Darius Carter is identified as the caller, and a portion where Darius Carter is alerted to the

---

[1] This motion exclusively pertains to the recording by Darius Carter. A separate motion *in limine* has been filed with respect to other coconspirator statements under United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977).  See ECF #119.

arrest of Diovanni Carter by his mother ("they caught up with your boy").[2]  The government

seeks to admit these portions for non-hearsay purposes of identifying the voice of the speaker

and context of Darius Carter's later instructions.[3]

| | |
|---|---|
| MAJOR: | Okay. |
| DARIUS CARTER: | Nah. |
| MAJOR: | They caught up with ya boy. |
| DARIUS CARTER: | Yeah? |
| MAJOR: | Yup. |
| DARIUS CARTER: | Where's he at now? |
| MAJOR: | Brockton.  He'll be out there tomorrow. |
| DARIUS CARTER: | Yeah. |
| MAJOR: | Ah huh. |
| DARIUS CARTER: | [unintelligible] |
| MAJOR: | He was in Mattapan Square. |
| DARIUS CARTER: | Fuck him. |
| MAJOR: | You're telling me. |

---

[2] Records of the facility identify the listed phone numbers for each inmate, and this particular call is identified to be with the number listed for Darius Carter's mother.

[3] Additionally, the Keeper of the Record will provide testimony concerning the phone system at the Plymouth County Correctional Facility, and the manner by which individual inmates make calls through a PIN system, and submission of certain phone numbers for outgoing calls, all of which individualize the speaker as Darius Carter.

Later during the call, Darius Carter speaks with an individual named Craig (believed to be Craig Carter).

| CRAIG: | Okay, cool.  You hear about your brother? (26:32) |
|---|---|
| DARIUS CARTER: | Yeah.  I just heard about it. |
| CRAIG: | Yeah.  I talked to him two days ago.  That's another topic. |

The portion of the recording that the government seeks to introduce follows[4]:

| DARIUS CARTER: | Other than that, I'm not wasting my time because I'm not going nowhere.  They just, all they do is wake you up at 4:30 in the morning, have you up, sittin downstairs for two hours and a half, three hours.  I'm not doing that.  Big waste of a day. |
|---|---|
| CRAIG: | [unintelligible] schedule. |
| DARIUS CARTER: | But I just need my police reports so I can start reading over this entire file for loop holes and stuff.  ***Whenever you all speak to that kid Dio, just let that nigga know, keep his fucking mouth closed.  Don't even be talking.*** |
| CRAIG: | [unintelligible] |
| DARIUS CARTER: | What happened? |
| CRAIG: | I said [unintelligible] like to brag more than anything.  Talk. |
| DARIUS CARTER: | ***Yeah.  Cuz niggas, we got, we already got the nigga, the co-d snitching, so.  That's the, that's the most we need right now.  So that nigga don't need*** |
| CRAIG: | Yeah. |

---

[4] A draft transcript of the call is attached as Exhibit 1 to this motion.

| | |
|---|---|
| DARIUS CARTER: | ***He don't need to be running his mouth, telling nobody about the case, nothing.***  Even the caseworker, the caseworker on the unit came and she, I went to speak to her to put my phone list and stuff.  But she's like, yeah what you here for?  What's your charge?  I told her my charges.  So she like, so what'd you rob?  I'm like nah, I don't know what you're talking about.  [laughs] |
| RECORDING: | You have one minute remaining. |
| DARIUS CARTER: | But I love y'all.  I'll speak to y'all in like, I'll call y'all in like two days. |

## ARGUMENT

**I.    DARIUS CARTER'S COMMANDS AND INSTRUCTIONS FOR DIOVANNI CARTER TO KEEP HIS MOUTH CLOSED ARE NOT HEARSAY AND ARE NOT BEING OFFERED FOR A HEARSAY PURPOSE**

The instructions and orders issued by Darius Carter to a third-party (Craig) for relay to Diovanni Carter are admissible because there is no factual content being asserted by the declarant (Darius Carter).  Indeed, these statements contain directives and instructions intended to be passed to Diovanni Carter and no truth is asserted, or capable of being inferred.  Cf. Fed. R. Evid. 801(c).  As such, these statements should be admitted because they do not carry any improper hearsay content and are not being offered for a hearsay purpose.

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c) (emphasis added). Thus, "[o]ut-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." Anderson v. United States, 417 U.S. 211, 219 (1974) ("the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were

false"); see also <u>United States v. Mehanna</u>, 735 F.3d 32, 58 (1st Cir. 2013) ("To qualify as

hearsay, a statement must be offered for its truth"). "'Instructions to an individual to do

something are ... not hearsay,' Graham, Federal Practice and Procedure: Evidence § 6705 at 409,

because they are not declarations of fact and therefore are not capable of being true or false."

<u>United States v. Reilly</u>, 33 F.3d 1396, 1410 (3rd Cir. 1994).  <u>See</u>, <u>e.g.</u>, <u>United States v. Kuthuru</u>,

665 Fed. Appx. 34, 38 (2d Cir. Nov. 3, 2016) ("Questions and commands are ordinarily not

hearsay because they are not offered for the truth of the matter asserted....").

     Certain out-of-court utterances — namely questions, commands, instructions, and

requests — cannot be classified as statements under the Federal Rules of Evidence because they

have no factual assertive content, and therefore cannot be offered to prove the truth of their

contents. <u>See</u> <u>United States v. Murphy</u>, 193 F.3d 1, 4–5 (1st Cir. 1999) ("[T]he out-of-court

statements in question were simply directions and not statements of fact at all."); <u>United States v.

White</u>, 639 F.3d 331, 337 (7th Cir. 2011) ("[A] command is not hearsay because it is not an

assertion of fact."); <u>United States v. Rodriguez-Lopez</u>, 565 F.3d 312 (6th Cir. 2009) ("Indeed, if

the statements were questions or commands, they could not—absent some indication that the

statements were actually code for something else—be offered for their truth because they would

not be assertive speech at all. They would not assert a proposition that could be true or false.").[5]

---

[5] <u>See</u> <u>Baines v. Walgreen Co.</u>, 863 F.3d 656, 662 (7th Cir. 2017) ("In other words, [hearsay]
statements assert propositions that may be true or false. They are distinct from other forms of
communication, such as questions or commands"); <u>United States v. Rutland</u>, 705 F.3d 1238,
1253 (10th Cir. 2013) (explaining that statements were instructions not offered for their truth,
and thus admissible); <u>United States v. Bellomo</u>, 176 F.3d 580 (2d Cir. 1999) (statements offered
as evidence of commands or threats, rather than for the truth of the matter asserted, are not
hearsay); <u>United States v. Hathaway</u>, 798 F.2d 902, 905 (6th Cir.1986) ("when a statement is
offered to prove neither the truth nor falsity, there is no need to assess the credibility of the
declarant. The significance lies entirely in the fact that the words were spoken. Thus, the
statement does not fall within the Rule 801(c) definition of hearsay nor would the purposes of the
hearsay rule be served by treating it as hearsay.").

Imperative statements, requests, and instructions, such as the statements above, cannot be true or false, and fail to meet the definition of hearsay, which is "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).[6]

Here, there is no factual content in the instruction given by Darius Carter that Diovanni Carter be told to keep his mouth "closed" that could be perceived by the jury as asserting some fact. Rather, the government intends to admit the recording for the fact that such a request or instruction was in fact made by Darius Carter, which on its own, constitutes evidence of conspiracy. In essence, the fact that one member of the conspiracy conveyed instructions to another member of the conspiracy in order to reduce the potential of generating additional evidence against them both is powerful evidence of the conspiracy. See United States v. Dandy, 998 F.2d 1344, 1351 (6th Cir. 1993) (The declaration "[T]ell him to get off my back and get himself another patsy," was deemed not to be an assertion; relevance of the words lay entirely in the fact that the words were spoken.).

The second portion of the recording where Darius Carter expresses concern regarding the co-defendant "snitching" is also not being offered for the factual assertion that Person 1 is in fact cooperating with the government. Indeed, the jury will learn of this firsthand when Person 1 testifies, and the government does not offer it for this purpose. Rather, this statement is being offered for the fact it was said, which is evidence of the conspiracy: the statement reflects Darius Carter's knowledge that a co-conspirator (Person 1) is now cooperating with the government; Darius Carter's knowledge of this fact is the stated motive, reasoning and basis for relaying a message to another co-conspirator, Diovanni Carter, that he keep his mouth closed. See Anderson, 417 U.S. at 228 (out-of-court statements which are not offered for their truth are not

---

[6] See Graham, Handbook of Federal Evidence, § 801:5 Rule 801(c) & nn. 2, 17.

hearsay, and, as such, are admissible if relevant to prove the conspiracy, regardless whether the requirements of the co-conspirator hearsay exception rule are met). See also United States v. Munson, 819 F.2d 337 (1st Cir. 1987) (statements of coconspirators not offered for the truth admissible "as long as they were relevant in some way to prove the conspiracy charged").[7]

In this context, the confrontation clause does not prohibit the introduction of the recording of Darius Carter's statement because it is not being offered for its truth and is not, therefore, testimonial. See, e.g., Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310 (2009) (testimonial statements are solemn declarations or affirmations "made for the purpose of establishing or proving some fact") (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004)). These statements are not being offered to prove the facts asserted within them – indeed, no historical facts are contained in them – rather, they are being offered for non-hearsay purposes.

## II.     THE STATEMENT IS ALSO ADMISSIBLE AS A COCONSPIRATOR STATEMENT IN FURTHERANCE OF THE CONSPIRACY

The government also submits that the recording is admissible as a coconspirator statement in furtherance of the conspiracy. See United States v. Petrozziello, 548 F.2d 20, 22–23 (1st Cir. 1977); see also United States v. Ciampaglia, 628 F.2d 632, 638 (1st Cir. 1980) (describing proper procedure for making what in this circuit is known as a "Petrozziello " determination).

### A.     Legal Standard for Admissibility of Co-Conspirator Statements

Rule 801(d)(2)(E) provides that statements "offered against an opposing party and . . . made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay.

---

[7] Even if there was some factually assertive component to this second portion of the recording, the government would offer it to demonstrate Darius Carter's state of mind, including his knowledge of Person 1's cooperation and his motive to instruct Diovanni Carter to keep his mouth closed.  See Fed. R. Evid. 803(3).

Such statements are admissible at trial for the truth of the matter asserted if the proponent establishes, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the defendants were members of the conspiracy, (3) the declarants were also members of the conspiracy, and (4) the declarants' statements were made in furtherance of the conspiracy. See United States v. Diaz, 670 F.3d 332, 348 (1st Cir. 2012). "How this works is that a judge conditionally admits the alleged coconspirator statements, 'subject to a later finding by the [judge], supported by extrinsic evidence (other than the statements themselves),' sufficient to show the conspiracy and the speaker's involvement in it." United States v. George, 761 F.3d 42, 54-55 (1st Cir. 2014) (quoting United States v. Sepulveda-Hernandez, 752 F.3d 22, 30 n.2 (1st Cir. 2014)). A district court's finding of admissibility under Rule 801(d)(2)(E) is known in this circuit as a Petrozziello ruling. See United States v. Ciresi, 697 F.3d 19, 25 (1st Cir. 2012).

"In making such a determination that a conspiracy existed, the trial court is to use a preponderance of the evidence standard." United States v. Rodriguez-Milian, 820 F.3d 26, 33 (1st Cir. 2016). To make this determination, the Court may consider any relevant information, including the statements being offered for admission. See Bourjaily v. United States, 483 U.S. 171, 181 (1987); United States v. Rivera-Santiago, 872 F.2d 1073, 1092-93 (1st Cir. 1989). However, co-conspirator statements alone cannot establish the existence of a conspiracy embracing both the declarant and the defendant; some extrinsic proof of the conspiracy's existence is required. See United States v. Capleton, 350 F.3d 231, 241 (1st Cir. 2003).

Additionally, to be admissible, co-conspirator statements must have been made "during" and "in furtherance of" a conspiracy. To be deemed "in furtherance," a statement "need not be necessary or even important to the conspiracy, or even made to a co-conspirator, as long as it can

be said to advance the goals of the conspiracy in some way." <u>United States v. Martinez-Medina</u>, 279 F.3d 105, 117 (1st Cir. 2002).

### B.     The Statement Was Made by a Coconspirator In Furtherance of the Conspiracy

The statements by Darius Carter on the jail call were made in furtherance of the conspiracy.  It is black-letter law that "a conspiracy does not end simply because one conspirator has been arrested," and "a conspirator's arrest or incarceration by itself is insufficient to constitute his withdrawal from the conspiracy." <u>United States v. Melton</u>, 131 F.3d 1400, 1405 (10th Cir. 1997); <u>see also</u> <u>United States v. Leoner-Aguirre</u>, 939 F.3d 310, 318 (1st Cir. 2019) ("We flatly reject as a matter of law the argument that [defendant]'s arrest and imprisonment necessarily constituted his withdrawal from the conspiracy."). When a conspiracy is ongoing, statements that relate to avoiding detection by law enforcement personnel can be in furtherance of the conspiracy. <u>See</u> <u>United States v. Wolf</u>, 839 F.2d 1387, 1393 (10th Cir. 1988) ("[C]oncealment of the crime done in furtherance of the main criminal objectives of the conspiracy falls within the coconspirator exception.").

To be deemed "in furtherance," a statement "need not be necessary or even important to the conspiracy, or even made to a coconspirator, as long as it can be said to advance the goals of the conspiracy in some way." <u>United States v. Martinez Medina</u>, 279 F.3d 105, 117 (1st Cir. 2002). <u>See</u> also <u>United States v. Rodriguez</u>, 525 F.3d 85, 101 (1st Cir. 2008) ("A statement is in furtherance of the conspiracy if it tends to advance the objects of the conspiracy as opposed to thwarting its purpose.")  A preponderance standard governs this finding as well. E.g., <u>United States v. Perez-Ruiz</u>, 353 F.3d 1, 11 (1st Cir. 2003).

Here, of course, an instruction by one conspirator that is to be relayed to a coconspirator warning them of the ramifications of speaking on a recorded line, and informing them of a

codefendant snitching furthers the objectives of the underlying conspiracy by reducing the potential of successful prosecution.  See United States v. Shores, 33 F.3d 438, 448 (4th Cir. 1994) (statements made to third party are "in furtherance" if they are designed to get third party to join or act to assist it in accomplishing its objectives); United States v. Mayberry, 896 F.2d 1117, 1120 (8th Cir. 1990) (explanatory statements which inform others of activities of conspiracy are "in furtherance" if construed as seeking assistance or cooperation).[8]

Reference to the co-defendant snitching, and Diovanni Carter's later efforts to identify the whereabouts of the cooperator (described in the government's Trial Brief), demonstrate the continuing nature of the conspiracy, albeit with evolving goals to alert confederates about the "snitch," tamper with witnesses and prevent additional evidence from being generated against them.  See United States v. Stokes, 64 F. App'x 352, 357 (4th Cir. 2003).  Given that the statement "need not be necessary or even important to the conspiracy, or even made to a coconspirator, as long as it be said to advance the goals of the conspiracy in some way," United States v. Martinez-Medina, 279 F.3d 105, 117 (1st Cir. 2002), Darius Carter's instructions for Diovanni Carter to keep his "fucking mouth closed" meet the criteria for admission. See United States v. Aviles-Colon, 536 F.3d 1, 17 (1st Cir. 2008) (finding statements designed "to keep [a co-conspirator] abreast of the conspiracy's activities" to be in furtherance of the conspiracy); United States v. Siegelman, 640 F.3d 1159, 1181 (11th Cir. 2011) ("[S]tatements between conspirators which provide reassurance [or] serve to maintain trust and cohesiveness among them . . . further the ends of the conspiracy[.]").[9]

---

[8] Indeed, at the time of the call, an unindicted co-conspirator, J.B., was at large and would remain so until March 13, 2019, when arrested on unrelated charges.

[9] Though the "in furtherance" requirement is generally construed broadly, see, e.g., United States v. Flemmi, 402 F.3d 79 (1st Cir. 2005), the limitation is not entirely without force. If statements constitute mere "idle chatter" or "narratives of past events," they are probably not admissible

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that the Court rule

the March 5, 2019 recording of Darius Carter is admissible.

ANDREW E. LELLING
United States Attorney

By:     */s/ Philip A. Mallard*
PHILIP A. MALLARD
GLENN A. MACKINLAY
Assistant United States Attorneys

Date: February 7, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically
to the registered participants as identified on the Notice of Electronic Filing.

By:     */s/ Philip A. Mallard*
PHILIP A. MALLARD
Assistant United States Attorney

Date: February 7, 2020

---

under the Rule. See United States v. Ciresi, 697 F.3d 19, 29 (1st Cir. 2012). These limitations do
not apply: this is certainly not idle chatter, and there is no reference to past events at all. The
statements pertains to the future and the necessity that another member of the conspiracy not
generate additional evidence by speaking on recorded lines, and relaying information that a
former co-conspirator turned against them.