UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHAN ROSSER-STEWART,<br><br>Defendant | No. 19-CR-10104-ADB |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS IDENTIFICATION**

The government opposes the defendant's motion to suppress identification. As grounds therefore, the government states that single-photo procedure was necessary based upon the circumstances faced by the police at the time and does not present any due process concerns. Moreover, this Court can confidently deny the motion because the single-photo procedure did not affect the reliability of the identification at all: the cooperating defendant (CW-1) had known the defendant for many years.

**STATEMENT OF RELEVANT FACTS**

The defendant previously moved to suppress the stop and detention that preceded the identification on the grounds that the Massachusetts State Police Trooper Eric Resendes lacked reasonable suspicion to stop the defendant. ECF #75. This motion was opposed by the government, ECF #93, and denied without an evidentiary hearing. See ECF #97. The government recites the facts found by the Court in its memorandum of decision, supplemented where necessary:

> On the evening of January 26, 2019, Resendes was on patrol in the city of Brockton in a marked police cruiser. [Arrest Report at 2]. At approximately 7:15 p.m., Resendes received radio transmissions indicating that officers from the Brockton Police Department were pursuing a vehicle occupied by four black males wearing hooded

1

sweatshirts, who were believed to have robbed a T-Mobile store at gunpoint. [Id.]. Officer Robinson of the Brockton Police communicated that the suspects had shot at officers while fleeing. [Brockton Reports at 2, 10]. The vehicle was subsequently abandoned following a crash at the intersection of Bristol Avenue and Carl Avenue. [Arrest Report at 2]. Upon proceeding to the area to assist with a search for the suspects, Resendes learned that Brockton Police had apprehended two of the four suspects, but had not recovered any of the suspects' weapons. [Arrest Report at 2; Turret Tape at 7]. One of the remaining suspects was described as being about 5'8" to 6' tall and having long braided hair, with a medium build and dark complexion. [Turret Tape at 8].

At approximately 8:03 p.m., Resendes observed a black male with braided hair, wearing a hooded sweatshirt, standing 5'11" in height, with a medium build and dark complexion cross the street and walk up the steps to a residence at 149 Carl Avenue, approximately a quarter mile away from where the suspects' vehicle was abandoned. [Arrest Report at 1–2]. The man was "sweating profusely," despite not wearing a jacket on a late-January night, and was "walking around on Carl Ave. knocking on doors." [Brockton Reports at 3]. Resendes stopped his cruiser in front of the residence, rolled down the window, and asked the male, later identified as RosserStewart, if he lived at the house. [Arrest Report at 2]. Rosser-Stewart said that he did not. [Id.]. Resendes stepped out of his cruiser and asked Rosser-Stewart what he was doing. [Id.]. Rosser Stewart said that he had gotten into a fight with his girlfriend, who had made him get out of her car, and that he was trying to get home. [Id.]. Resendes then asked Rosser-Stewart if he lived in Brockton. [Id.]. Rosser-Stewart said that he lived in Boston. [Id.].

Resendes instructed Rosser-Stewart to raise his hands and not to move. [Id.]. He then approached Rosser-Stewart, placed him in handcuffs, and performed a pat-frisk for weapons. [Id.]. Resendes placed Rosser-Stewart "in the rear seat of [his] cruiser . . . and informed him that he was not under arrest, however he would be detained until [Resendes] could rule out that he was not a suspect of a recent crime." [Id.]. Resendes radioed State Police dispatch and learned that Rosser-Stewart's criminal history included armed robbery and illegal possession of a firearm. [Id.]. Two officers from the Brockton Police Department then arrived on the scene to assist Resendes. [Id. at 3]. One officer sent a photo of Rosser-Stewart to a Brockton detective, who was interviewing a cooperating suspect. [Brockton Reports at 12]. After the cooperating suspect confirmed that Rosser-Stewart was one of the suspects involved in the armed robbery, officers from the Brockton Police placed Rosser-Stewart under arrest and took him into custody. [Id. at 3, 12; Arrest Report at 3].

ECF #97, p. 1-3.

The defendant was identified by CW-1 through a photograph that was transmitted to Det. Lopez at 8:09 PM. See ECF #91-3; 93-6 (compact disc of Brockton Turret Tape recordings) (20.10.36, radio transmission of Det. Lopez confirming identification by CW-1 of Rosser-

Stewart).  Once identified by CW-1, the defendant was placed under arrest and transported to the Brockton Police station by another Brockton officer.  See ECF #91-4.

In fact, CW-1 knew the defendant extremely well.  They had grown up together in the same neighborhood, spent time in jail together, had been previously arrested together, and committed at least one prior armed robbery together.  See ECF #199, Trial Testimony of CW-1, at 15-16 (CW-1 describes prior a robbery with the Defendant), 17 ("Stephan grew up in my neighborhood"), 17 ("Q. Well, you've been in the Suffolk County House of Correction with Steph on occasions, right? A. Have I? Yeah, I have, actually, I have."), 17-18 ("Q. You guys have been friends for years, right? A. Correct."), 18 ("Q. Well, in fact you were arrested with Steph in a car on July 13 -- A. That's correct. Q. -- 2016, right? A. Yeah."); Exhibit 1, p. 3-5 (grand jury testimony); Exhibit 2 (police incident report from July 2016 where CW-1 and the Defendant were in a vehicle together).

## **DEFENDANT'S MOTION**

The defendant filed his motion on February 6, 2020 (ECF #116).  The motion claims that the "identification must be excluded from evidence at trial" because "the Brockton police conducted an impermissibly suggestive identification procedure here by presenting a single photograph of Rosser-Stewart to the cooperating suspect." ECF #116, p. 4.

## **ARGUMENT**

I. **THE SINGLE-PHOTO PROCEDURE WAS JUSTIFIED BY THE CIRCUMSTANCES, AND, IN ANY EVENT, THE IDENTIFICATION OF THE DEFENDANT IS RELIABLE AND SHOULD BE ADMITTED AT TRIAL**

A district court considering a motion to suppress identification evidence engages in a two-step analysis.  See United States v. Rivera-Rivera, 555 F.3d 277, 283 (1st Cir. 2009). First, the district court determines whether an "impermissibly suggestive" procedure was used to

secure the identification. Id.; United States v. Hilario-Hilario, 529 F.3d 65, 71 (1st Cir. 2008). If the procedure was not impermissibly suggestive, the analysis ends and the motion is denied. See United States v. Lopez-Lopez, 282 F.3d 1, 11 (1st Cir. 2002).

If the procedure is deemed impermissibly suggestive, the district court then determines whether the identification was nonetheless reliable under the totality of the circumstances. See Rivera-Rivera, 555 F.3d at 283. This assessment is performed by applying the Biggers factors, see United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003), to determine whether the reliability of the identification outweighs the "corrupting effect of the suggestive identification itself." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). This balancing is intended to "avoid depriving the jury of identification evidence that is reliable, *notwithstanding* improper police conduct." Perry v. New Hampshire, 565 U.S. 228, 241 (2012) (citing Brathwaite, 432 U.S. at 112-13) (emphasis in original).

Moreover, the test is meant to "screen out only evidence that is clearly unreliable and not to supplant the jury's ordinary function of weighing what the witness says and choosing the weight to accord it." United States v. Jones, 689 F.3d 12, 18 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1278 (2013).  "Before excluding identification evidence, the court must be persuaded that there was a very substantial likelihood of irreparable misidentification. A court must also be mindful that it is only in extraordinary cases that identification evidence should be withheld from the jury." United States v. de Jesus-Rios, 990 F.2d 672, 677 (1st Cir.1993); United States v. Arthur, 764 F.3d 92, 99 (1st Cir. 2014) (Identification evidence should be suppressed on due process grounds only in "extraordinary cases" where the court "is persuaded that there was a very substantial likelihood of irreparable misidentification."). This is not such a case.

    A.    **The Single-Photo Identification Procedure Was Justified by the Circumstances**

"The first prong of the test — whether the identification procedure was impermissibly suggestive — 'can be broken down into two constituent parts: that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures.'" United States v. Holliday, 457 F.3d 121, 125 (1st Cir.2006) (quoting 2 W. LeFave, Criminal Procedure 668, 2d. Ed. (1999)).

As an initial matter, the single-photo procedure was not 'suggestive' in the sense that the police were attempting to telegraph a known suspect to CW-1. At the time -- about thirty minutes after the shooting -- the officers did not know if the Defendant was involved in the crime, and had not yet reviewed the surveillance video. In this context, the single-photograph procedure itself made by officers was not 'suggestive' of Rosser-Stewart's involvement in the traditional sense. This is particularly so when law enforcement had no other information as to Rosser-Stewart's involvement apart from the context of where and when he was found and his matching the description provided by CW-1 minutes before the identification.

**Consequently**, irrespective of how suggestive the single-photo procedure was, using a single-photograph "was necessary under the circumstances." Arthur, 764 F.3d at 101 n.7. The procedure used in this case occurred close in time to the robbery, the defendant was detained near the abandoned vehicle, and the single-photo "serve[d] legitimate law enforcement purposes" because it occurred close in time, and helped the police promptly determine whether they had apprehended the correct person. See United States v. Hawkins, 499 F.3d 703, 708 (7th Cir. 2007) (Court explained that "showup identification is not unduly suggestive in cases of extraordinary urgency," such as "confirming that an individual apprehended close in time and proximity to the scene of a crime is, in fact, the suspected perpetrator"); also United States v. Pickar, 616 F.3d 821, 827-28 (8th Cir. 2010) (holding show-up not unduly suggestive where defendant was

handcuffed and standing in front of marked police cruiser about 20 to 30 feet away from recently-robbed bank and witnesses viewed the defendant through window from within bank). This procedure permitted the officers to confirm the Defendant's immediately, as opposed to comparing the Defendant's attire to the surveillance video, which would have taken time that the police did not have in the circumstances.  See United States v. Watson, 76 F.3d 4, 6 (1st Cir.1996) ("Show-ups that take place immediately after the offense has been committed may be necessary in order to avoid the mistaken apprehension of the wrong person.").  "Thus, notwithstanding any 'inherent element of suggestiveness' in such a confrontation, the quick and informal confirmation that took place here was appropriate for the circumstances." Rivera-Rivera, 555 F.3d at 284 ("The initial encounter at the mall was no more than a quick confirmation at the scene of the crime that the officers had detained the correct individuals.").[1]

### B. In any event, the identification by CW-1 is inherently reliable

Although a conclusion that no impermissibly suggestive procedures took place "eliminates" the defendant's "due process arguments" and ends the inquiry, Watson, 76 F.3d at

---

[1] The defendant's claim that the single-photo procedure was unnecessary since both the cooperator and the defendant were in custody is at odds with the position he took in the first motion to suppress-- that the police improperly detained him without reasonable suspicion. Compare ECF #116, p. 7 ("At the time of the identification procedure both the cooperating suspect and the Defendant were in custody."; "There was no urgency at the time they utilized the suggestive one photo show-up and such procedure, given other less suggestive methods available, should not be countenanced by this court.") with ECF #75, p. 1 ("Specifically, the officer conducted a Terry stop even though he lacked reasonable articulable suspicion to detain the defendant."), 9.  Indeed, in opposing the first motion to suppress the government argued, ECF #91-1, p. 17-18, and the Court found that the stop was no longer than necessary.  See ECF #97, p. 6 ("Because they pursued this investigation diligently and without delay, the length of the stop was not unreasonable.").  Had the officers kept the defendant detained while they attempted to generate an array or compare the Defendant's attire to the surveillance video, the defendant may well have claimed the length of detention was too long and transformed the 'stop' into an arrest.

6

9; Rivera-Rivera, 555 F.3d at 284, the additional facts in this case provide assurance that identification is sufficiently reliable for introduction at trial.

Put plainly, CW-1 has known the defendant for many years.[2] See Henderson, 320 F.3d at 101 ("Nor need we dwell too long on Powers' identification of defendant. There was evidence from which it could be found that she had known Henderson going back to 1994."); United States v. Drougas, 748 F.2d 8, 27-28 (1st Cir.1984), holding modified on other grounds by United States v. Piper, 35 F.3d 611 (1st Cir.1994) ("As a fellow conspirator in the smuggle, the government witness certainly had the opportunity and incentive to accurately identify Ellis.").[3]

---

[2] See ECF #199 ECF #199, Trial Testimony of CW-1, at 15-16 (CW-1 describes prior robbery with the defendant), 17 ("Stephan grew up in my neighborhood"), 17 ("Q. Well, you've been in the Suffolk County House of Correction with Steph on occasions, right? A. Have I? Yeah, I have, actually, I have."), 17-18 ("Q. You guys have been friends for years, right? A. Correct."), 18 ("Q. Well, in fact you were arrested with Steph in a car on July 13 -- A. That's correct. Q. -- 2016, right? A. Yeah.").

[3] See United States v. Stewart, Crim. No. 18-CR-30, 2019 WL 6173775, at *8 (D.Vt. 2019) (Reiss, J.) (finding reliability and admissibility despite suggestiveness because witness "was familiar with Defendant prior to the identification, as evidenced by her self-incriminating admissions regarding her participation in alleged drug trafficking activities with Defendant."); United States v. Apicelli, Crim. No. 14-012-JD, 2015 WL 2064290, at *7-8 (D.N.H. 2018) (DiClerico, J.) ("Apicelli does not dispute that Bain knew him and had seen him on multiple occasions over a period of two years."; "As a result, Bain had a well-founded basis to identify Apicelli."); United States v. Harris, Crim. No. 12-0065, 2018 WL 1517216, at *18 (D.Vt. 2018) ("Where the witness was an active coconspirator, however, as Miller is in this case, the concern with unduly influencing the witness with a single photo is not as present."); United States v. Crumble, Crim. No. 18-0032, 2018 WL 1737642, at *2 (E.D.N.Y. Apr. 11, 2018) (Ross, J.) ("An in-court identification is ... admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident."); United States v. Mack, Crim. No. 12-00012, 2013 WL 143360, at *6 (D.Vt. 2013) (Sessions, J.) (finding a pretrial identification based on a single photograph to be admissible as independently reliable where the identifier "purchased drugs from [Defendant]; she was not a casual observer"); United States v. Stanley, Crim. No. 09-0141, 2009 WL 5066864, at *4 (E.D.N.Y. Dec. 22, 2009) (Garaufis, J.) (holding that use of single photograph was not unnecessarily suggestive because "unlike the typically improper situation in which a bystander is asked to identify an otherwise-unknown perpetrator based solely on observation at the time of the crime, [the witness] was a co-conspirator and had spent one to two days with the defendant prior to the identification"); Espinal v. Duncan, No. 00-cv-4844-RWS, 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (in-court identification was valid despite use of single photograph where trial court found an

7

This ends the inquiry and proves the reliability of CW-1's identification.  See United States v. Garcia-Alvarez, 541 F.3d 8, 15 (1st Cir. 2008) ("We are not required to accord each factor equal weight or even to consider all five factors.").  Nevertheless, consideration of the factors also supports the reliability of the identification.

The five Biggers factors used to assess reliability are "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the defendant; (4) the level of certainty demonstrated by the witness at the confrontation; (5) the length of time between the crime and the confrontation." Henderson, 320 F.3d at 100 (citing Neil, 409 U.S. at 199–200).  Because courts engage in a totality of the circumstances analysis, "not all the *Biggers* factors must point in one direction for an identification to be upheld."  United States v. DeCologero, 530 F.3d 36, 63 (1st Cir. 2008). Here, however, they all do.

### 1.     Opportunity to View at the Time of the Crime

Apart from the years of acquaintance, CW-1 had the "opportunity to view" the defendant from the moment they agreed to the robbery until they abandoned the vehicle.  See Ex. 1.  This amounted to at least an hour during the pendency of this particular conspiracy, to say nothing of the fact that CW-1 knew the Defendant.  In other cases, the First Circuit has weighed the "opportunity to view" factor in favor of reliability when the witness not familiar with the individual had observed them for far less time. See Jones, 689 F.3d at 18 (affirming denial of

---

independent source of reliability, "namely that [the witness] already knew [petitioner] by first name as well as street name, ... knew where [petitioner] lived and the car he drove, and had seen him at least 20 times in the prior year."); United States v. Stewart, 770 F. Supp. 872, 877 (S.D.N.Y. 1991) (Edelstein, J.) (holding that identification through bank surveillance photographs was independently reliable because the identifier "alleged that he and the defendant were co-conspirators").

motion to suppress when witness had "about ten or fifteen seconds to get a good look at [the defendant]"); de Jesus-Rios, 990 F.2d at 677 n.6 (witness had "at least five minutes" to view the defendant).

### 2. Attention Paid

CW-1 certainly paid attention to the defendant. CW-1 answered the defendant's phone calls and then sat behind him during the discussion and formation of the conspiracy and the travel to and from the robbery. Additionally, CW-1 clear paid close attention the defendant, his weapon and black duffel bag during the robbery itself, as the surveillance video makes clear. CW-1 also provided an accurate description of the Defendant, demonstrating his knowledge and attention (ECF #93-2, 93-3). See Arthur, 764 F.3d at 100 (noting that witness's close attention was "demonstrated by her ability to provide an accurate description" of the defendant).

### 3. Accuracy of prior description

Prior to being shown the photograph, CW-1 provided a detailed physical description of the CW-1, which was memorialized by Detective Lopez in his report, ECF #91-3, and broadcast to the officers who were searching for the suspects. See ECF #91-1, 91-6, 91, p. 14-16 (arguing that the Defendant matched detailed five-point description provided by CW-1).

### 4. Certainty

CW-1 identified the defendant immediately upon seeing the photograph,[4] as one would expect in the context of an identification of a multi-year acquaintance. See Arthur, 764 F.3d at 102 (treating witness's immediate reaction upon seeing defendant as reflecting certainty). No hesitation or uncertainty were noted, and the identification was immediate. Cf ECF #91-3.

---

[4] See ECF #91-3 (report indicating 8:09 PM identification); 93-6 (compact disc of Brockton Turret Tape recordings) (20.10.36, radio transmission of Det. Lopez confirming identification by CW-1 of Rosser-Stewart).

### 5. Length of Time

The defendant was identified about forty minutes after the suspects abandoned the vehicle. See ECF #91-3. The First Circuit has upheld the admission of identification evidence when the length of time between the crime and the confrontation was "nearly seven years" when the other factors were persuasive. See United States v. Flores-Rivera, 56 F.3d 319, 331 (1st Cir. 1995); Drougas, 748 F.2d at 28 (affirming admission of identification after five years).

### 6. Totality and Balancing

Because CW-1 knew the defendant extremely well, and all of the factors weigh in favor of reliability there is no "corrupting effect of the suggestive identification itself." Brathwaite, 432 U.S. at 114.

### C. The Motion Should be Denied Without a Hearing

Based upon the foregoing, this Court can confidently deny the defendant's motion, especially here, where the defendant offers no factual basis to challenge the necessity of the single-photo procedure or the reliability of the identification itself. Cf. ECF #116. Indeed,

> what distinguishes this case is the fact that [CW-1] had prior familiarity with the person [he] identified—indeed, they were literal 'partners in crime.' It is uniformly held by state and federal courts, that where a witness is shown to have had prior familiarity with a defendant, a due process hearing need not be held, as no amount of police suggestion is likely to have influenced the witness's identification.

United States v. Veloz, 109 F.Supp.3d 305, 312 (D.Mass. 2015) (Stearns, J.), aff'd 948 F.3d 418 (1st Cir. 2020).

Simply put, "a hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be

resolved on a paper record." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).[5] Evidentiary hearings on motions to defendant are required only when a defendant alleges facts that are "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." United States v. Lewis, 40 F.3d 1325, 1331 (1st Cir. 1994).[6]

In this case, the defendant filed no affidavit whatsoever in support of his Motion. Since he has not filed an affidavit, and failed to make a sufficient showing that material facts are in doubt, an evidentiary hearing is not warranted. This Court has sufficient information to deny the defendant's motion.

## CONCLUSION

Based upon the foregoing, the Defendant's motion should be denied without an evidentiary hearing.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Philip A. Mallard*
Philip A. Mallard
Glenn A. MacKinlay
Assistant U.S. Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3674

---

[5] See United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990) ("The facts for granting an evidentiary hearing in a criminal case should be substantive; did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?").

[6] See also United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (noting that "evidentiary hearings on motions are the exception, not the rule"); Panitz, 907 F.2d at 1273 ("[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion").

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>/s/ Philip A. Mallard
>Philip A. Mallard
>Assistant U.S. Attorney

Date: April 10, 2020