UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 19-cr-10104-ADB-3 |
| STEPHAN ROSSER-STEWART, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

BURROUGHS, D.J.

On September 11, 2019, a grand jury returned an indictment charging Stephan Rosser-Stewart ("Rosser-Stewart") with conspiracy to Interfere with Commerce by Robbery in violation of 18 U.S.C. § 1951(a) (Count I); interfering with Commerce by Robbery in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2 (Count II); Discharging, Brandishing, Using and Carrying a Firearm in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2 (Count IX); and being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) (Count X). [ECF No. 55]. Currently pending before the Court is Rosser-Stewart's motion to suppress the photo identification made of him on January 26, 2019. [ECF No. 116]. For the reasons set forth below, the motion to suppress, [ECF No. 116], is DENIED.

I.      BACKGROUND

The following facts are drawn from the arrest report, [ECF No. 91-4 ("Arrest Report")], prepared by Massachusetts State Police Trooper Eric Resendes ("Resendes"), pertinent Brockton

Police reports, [ECF No. 91-3 ("Brockton Reports")], and transcripts of relevant portions of Brockton Police radio communications, [ECF No. 91-1 ("Turret Tape")].

On the evening of January 26, 2019, after pursuing a vehicle occupied by four black males wearing hooded sweatshirts who were believed to have robbed a T-Mobile store at gunpoint, police apprehended a suspect who confessed to participating in the robbery and agreed to cooperate with the authorities (the "Cooperating Witness"). [Arrest Report at 2; Brockton Reports at 2, 8]. The Cooperating Witness described one of the other defendants as having braided hair and being "5'8–6' in height." [Id.].

En route to the area to assist with a search for the suspects, Resendes learned that Brockton Police had apprehended two of the four suspects, but had not recovered any of the suspects' weapons. [Arrest Report at 2; Turret Tape at 7]. At approximately 8:03 p.m., Resendes observed a black male with braided hair, wearing a hooded sweatshirt, approximately 5'11" in height with a medium build and dark complexion, cross the street and walk up the steps to a residence at 149 Carl Avenue, approximately a quarter mile away from where the suspects' vehicle was abandoned. [Arrest Report at 1–2, 8]. The man was "sweating profusely," despite not wearing a jacket on a late-January night, and was "walking around on Carl Ave. knocking on doors." [Brockton Reports at 3].

Resendes stopped his cruiser in front of the residence, rolled down the window, and asked the male, later identified as Rosser-Stewart, if he lived at the house. [Arrest Report at 2]. Rosser-Stewart said that he did not. [Id.]. Resendes stepped out of his cruiser and asked Rosser-Stewart what he was doing. [Id.]. Rosser-Stewart said that he had gotten into a fight with his girlfriend, who had made him get out of her car, and that he was trying to get home. [Id.].

Resendes then asked Rosser-Stewart if he lived in Brockton.  [Id.].  Rosser-Stewart said that he lived in Boston.  [Id.].

Resendes instructed Rosser-Stewart to raise his hands and not to move.  [Id.].  He approached Rosser-Stewart, placed him in handcuffs, and performed a pat-frisk for weapons. [Id.].  He then placed Rosser-Stewart "in the rear seat of [the] cruiser . . . and informed him that he was not under arrest, however he would be detained until [Resendes] could rule out that he was not a suspect of a recent crime."  [Id.].  Resendes radioed State Police dispatch and learned that Rosser-Stewart's criminal history included armed robbery and illegal possession of a firearm.  [Id.].  Two other officers from the Brockton Police Department arrived on the scene to assist Resendes.  [Id. at 3].

One of the Brockton Police Officers sent a photo of Rosser-Stewart via text message to a Brockton detective, who was interviewing the Cooperating Witness.  [Brockton Reports at 3, 8, 12].  The Cooperating Witness confirmed that Rosser-Stewart was one of the suspects involved in the armed robbery.  [Id. at 3, 8, 12; Arrest Report at 3].  Officers from the Brockton Police placed Rosser-Stewart under arrest and took him into custody.  [Brockton Reports at 3, 12; Arrest Report at 3].

Rosser-Stewart now argues that the Cooperating Witness' identification of the photograph should be suppressed.  [ECF No. 116 at 1].

## II.   LEGAL STANDARD

"The Due Process Clause is implicated in a witness's identification of a suspect 'only when law enforcement officers use an identification procedure that is both suggestive and unnecessary.'"  United States v. Apicelli, No. 14-cr-00012, 2015 WL 2064290, at *7 (D.N.H. May 4, 2015) (quoting Perry v. New Hampshire, 556 U.S. 228, 238 (2012)).  "The First Circuit

employs a two-part test to evaluate the admissibility of an out-of-court identification.  First, the

Court determines if the identification procedure was 'impermissibly suggestive.'  Next, it asks,

notwithstanding the suggestive procedure, if the identification was reliable under the totality of

the circumstances."  United States v. Arruda, 757 F. Supp. 2d 66, 69 (D. Mass. 2010) (first citing

United States v. Henderson, 320 F.3d 92, 100 (1st Cir. 2003), then citing Manson v. Brathwaite,

432 U.S. 98, 114 (1977)).  "[B]efore suppressing identification evidence, a 'court must be

persuaded that there was a very substantial likelihood of irreparable misidentification' and only

in extraordinary circumstances should identification evidence be withheld from the jury."

United States v. Watson, 76 F.3d 4, 6 (1st Cir. 1996) (quoting United States v. de Jesus-Rios,

990 F.2d 672, 677 (1st Cir. 1993)).

## III.   DISCUSSION

"A single-photo identification procedure may be, but is not always, unnecessarily or

impermissibly suggestive."  Apicelli, 2015 WL 2064290, at *7 (citing United States v. Constant,

No. 2:12-cr-00065, 2013 WL 441175, at *6 (D. Me. Feb. 5, 2013)).  "The Supreme Court has

allowed identifications even in cases where only one photograph has been shown to a witness or

where a single suspect is brought before a victim for identification if circumstances made such a

procedure necessary or there was a sufficient showing that the identification was nonetheless

reliable."  Constant, 2013 WL 441175, at *6; see Manson, 432 U.S. at 114–16 (holding that

single photo shown to undercover narcotics officer was unnecessarily suggestive but admissible

because identification was otherwise reliable where officer saw drug dealer for several minutes

in good light, provided a thorough description, and was certain about his identification).  In

determining whether a single-photo lineup was impermissibly suggestive, the Court considers

whether the identification was suggestive and whether "there was some good reason for the

failure to resort to less suggestive procedures." United States v. Holliday, 457 F.3d 121, 125 (1st Cir. 2006). In this case, the Court need not consider whether the single-photo procedure may have been impermissibly suggestive, because the identification was so clearly reliable. See Manson, 432 U.S. at 106 ("The admission of testimony concerning a suggestive and unnecessary identification does not violate due process so long as the identification possesses sufficient aspects of reliability.").

Reliability is the "linchpin in determining the admissibility of identification testimony." Henderson, 320 F.3d at 100. In determining the reliability of a witness identification, "due process requires courts to assess, on a case-by-case basis, whether improper police conduct created a 'substantial likelihood of misidentification.'" Perry, 556 U.S. at 239 (quoting Neil v. Biggers, 409 U.S. 188, 201 (1972)).

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199–200. The Court is "not required to accord each factor equal weight or even to consider all five factors." United States v. Garcia-Alvarez, 541 F.3d 8, 15 (1st Cir. 2008). "[N]ot all the Biggers factors must point in one direction for an identification to be upheld." United States v. DeCologero, 530 F.3d 36, 63 (1st Cir. 2008) (emphasis omitted).

With regard to the Cooperating Witness' opportunity to view the criminal, Rosser-Stewart argues that the robbery participants wore masks and that the record lacks information "as to whether the cooperating witness had an opportunity to view his co-conspirators at a time where they were unmasked." [ECF No. 116 at 5]. The First Circuit has upheld witness identifications of assailants, even when their opportunity to view the assailants "was hampered

by the assailants' intermittent use of masks and blindfolds." <u>Garcia-Alvarez</u>, 541 F.3d at 14.

The Cooperating Witness had known Rosser-Stewart for years before the robbery.  <u>See</u> [ECF No.

199 at 17–18].  He testified that he grew up in the same neighborhood as Rosser-Stewart, [<u>id.</u> at

17], and that they were friends who had previously committed robberies together and served time

together, [<u>id.</u> at 17–18].  <u>See, e.g.</u>, <u>Henderson</u>, 320 F.3d at 101 ("Nor need we dwell too long on

Powers' identification of defendant.  There was evidence from which it could be found that she

had known [the defendant] going back [around ten years.]").  On the night of the robbery at

issue, the Cooperating Witness travelled from Boston to Brockton with Rosser-Stewart to

commit the robbery.  <u>See, e.g.</u>, <u>United States v. Harris</u>, 12-cr-00065, 2018 WL 1517216, at *18

(D. Vt. Feb. 27, 2018) ("Where the witness was an active coconspirator, however, . . . the

concern with unduly influencing the witness with a single photo is not as present."); [ECF No.

235-1 at 4, 18–23].  The witness therefore had a strong basis for knowing that Rosser-Stewart

was a participant to the robbery and making a reliable identification.

 Concerning the Cooperating Witness' degree of attention, Rosser-Stewart argues that

"[o]ne could assume that the cooperating suspect would be paying a great deal [of] attention to

his co-defendant's [sic] but absent evidence on this issue, the Defendant submits that this factor

is at best neutral in the <u>Biggers</u> analysis."  [ECF No. 116 at 5].  The Court agrees that evidence

regarding the attentiveness of the witness is absent but finds that it is not an important aspect of

the analysis here given the longstanding relationship between the Cooperating Witness and

Rosser-Stewart and the Cooperating Witness' undisputed familiarity with Rosser-Stewart.

 The Cooperating Witness also accurately described Rosser-Stewart before seeing the

photograph.  Prior to the photographic identification of Rosser-Stewart, the Cooperating Witness

described him as a black male with "braided hair," approximately "5'8–6' in height."  [Brockton

Reports at 8].  Rosser-Stewart argues that the lack of detail discredits the description.  [ECF No. 116 at 5–6].  The physical description of his co-conspirator by the Cooperating Witness, however, was accurate, even if sparse.

Finally, as to certainty and timeliness, the cooperating witness identified Rosser-Stewart immediately upon being shown the photograph, within forty minutes of the robbery.  At approximately 7:15 p.m. on January 26, 2019, there was a law enforcement broadcast to the effect that they were pursuing the getaway vehicle from the T-Mobile robbery.  [Arrest Report at 2].  The text message containing the photograph which the Cooperating Witness identified as picturing Rosser-Stewart was sent at 8:09 p.m. that same night.  [Brockton Reports at 8].  The identification was therefore made close in time to the robbery and there is nothing to indicate that the Cooperating Witness was at all uncertain in his identification of Rosser-Stewart.

Following consideration of the <u>Biggers</u> factors, most mitigate strongly in favor of the reliability of the identification and none significantly discredit it.  Overall, the Court is sufficiently confident in the reliability of the identification given the long-standing relationship between the Cooperating Witness and Rosser-Stewart, their joint participation in the robbery, the accuracy of the physical description provided by the Cooperating Witness, and the timeliness and certainty of the identification.  Therefore, the Court determines that, taking into account the totality of the circumstances, including the <u>Biggers</u> factors, the identification was reliable.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, the Court finds that even if the identification procedure taken was impermissibly suggestive, the identification was nonetheless sufficiently reliable to be admitted.  Rosser-Stewart's motion to suppress the Cooperating Witness' identification, [ECF No. 116], is therefore <u>DENIED</u>.

**SO ORDERED.**

April 22, 2020

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE
